**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| | ) | |
| **vs.** | ) | **Case No. 22 C 1781** |
| | ) | |
| | ) | |
| **ROBERT BERRIOS** | ) | |
| | ) | |

**MEMORANDUM OPINION AND ORDER**

MATTHEW F. KENNELLY, District Judge:

In December 2017, following a two-week trial, a jury found Robert Berrios guilty of various charges related to a spree of armed robberies committed by him and his co-defendants around the Chicagoland area in 2012. Specifically, the jury convicted Mr. Berrios of conspiracy to commit Hobbs Act robbery (count 1); nine completed Hobbs Act robberies (counts 6-8, 12-15, and 18-19); brandishing a firearm during and in relation to the robbery charged in count 8 (count 9); and possession of a firearm by a convicted felon on the date of robbery charged in count 8 (count 10). In April 2019, the Court sentenced him to a thirty-year prison term.

On appeal, Mr. Berrios challenged the Court's denial of his motion to suppress certain evidence that the government found through a warrantless search of his cellphone. The court of appeals affirmed the Court's denial of Mr. Berrios's motion to suppress. *United States v. Berrios*, 990 F.3d 528, 529 (7th Cir. 2021). In April 2022, Mr. Berrios filed a *pro se* motion under 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence. The Court denies his motion for the reasons stated below.

## Background

### A.     The indictment

On October 15, 2013, a grand jury returned an indictment against Mr. Berrios and his co-defendants, Julio Rodriguez, David Revis, and Luis Diaz, charging them with conspiracy to commit Hobbs Act robbery, in violation of 18 U.S.C. § 1951(a) (count 1). The indictment also charged Mr. Berrios with numerous substantive counts of Hobbs Act robbery in violation of 18 U.S.C. § 1951(a) (counts 2-8, 11-15, and 18-20), one count of brandishing a firearm during and in relation to an August 15, 2012 robbery of a currency exchange in violation of 18 U.S.C. § 924(c)(1)(A) (count 9), and one count of possession of a firearm by a convicted felon during that same robbery, in violation of 18 U.S.C. §§ 922(g)(1) and 924(e) (count 10).  These charges arose out of Mr. Berrios and his co-defendants' coordinated armed robberies of a number of cellphone stores, currency exchanges, dollar stores, and retail pharmacies around Chicago.

### B.     Motions to suppress

As relevant to Mr. Berrios's petition, he moved prior to trial to suppress three categories of evidence that he contended were obtained unlawfully:  information obtained—without a warrant—from a cellphone found during a search incident to his arrest; a witness's out-of-court identification of Mr. Berrios from a photo array shortly after he robbed an AT&T store; and cell site data obtained from his cellphone pursuant to a court order that he contended was based on an affidavit containing a misstatement. The Court heard and ruled on the first two motions before the trial, and it heard and ruled on the third during the trial, before closing arguments.  The Court denied all three motions.  The Court will discuss each in turn.

1.  **Motion to suppress information from the warrantless search of
    Mr. Berrios's cellphone during his arrest**

On November 6, 2012—pursuant to an ongoing surveillance operation of Mr.
Berrios and his co-defendants in connection with the robbery spree—FBI agents
conducted a traffic stop of a vehicle Mr. Berrios was driving and arrested him without a
warrant. During a search incident to that arrest, the agents recovered a cellphone
which they proceeded to search without a warrant—including downloading the contacts
stored in the phone, call logs, text messages, and photographs of Mr. Berrios with his
co-defendants.

Mr. Berrios filed a motion to suppress the information seized from his cellphone
during what he contended was an unlawful search. The government conceded that the
search of his cellphone was unlawful under *Riley v. California*, 573 U.S. 373 (2014), and
that *Riley* applied retroactively. But the government also contended that the law at the
time of the search did not prohibit it, and thus the good-faith exception to the
exclusionary rule recognized in *Davis v. United States*, 564 U.S. 229 (2011), applied.

On August 8, 2017, the Court denied Mr. Berrios's motion, holding that:

> [T]he state of the law in this Circuit at the time was that a search of
> personal effects on an arrestee's person incident to his arrest was proper.
> Because the officer who conducted the search complied with then-
> controlling precedent, the evidence obtained from the search is not subject
> to exclusion, as the search was conducted with the objectively reasonable
> good-faith belief that it was lawful. *See United States v. Gary*, 790 F.3d
> 704, 705, 711 (7th Cir. 2015); *see generally Davis v. United States*, 564
> U.S. 229, 240 (2011).

Order on Mot. to Suppress Information Obtained from Cellphone, No. 12-CR-0853, Dkt.
no. 321.

On appeal, the Seventh Circuit affirmed the denial of the motion to suppress on

the basis that "virtually all of the evidence the government found on the phone had an independent source and was thus admissible on that ground . . .[,] so any mistake in the application of *Riley* and *Davis* was harmless." *Berrios*, 990 F.3d 528, 534.

**2.    Motion to suppress out-of-court identification**

A witness to the October 22, 2012 AT&T store robbery—Jose Hernandez—identified Mr. Berrios from a photo array that he was shown immediately after the robbery. Mr. Berrios moved to suppress the identification on the basis that it was conducted in a suggestive manner.

The Court held a hearing on the motion. Mr. Berrios's attorney at the time, Sarah Garber, subpoenaed Hernandez for the hearing, but he did not appear. A discussion unfolded during the hearing regarding Ms. Garber's attempts to serve and make contact with Hernandez, the government's contacts with him, and what Ms. Garber proposed to do given Hernandez's absence. The Court *asked* Ms. Garber—it did not "offer" as Mr. Berrios contends it did—whether she planned to pursue the option of seeking the arrest of Hernandez due to his failure to appear pursuant to the subpoena. Ms. Garber instead requested a short continuance to allow her another opportunity to attempt service on Hernandez. The Court overruled that request given the impending trial date, the efforts it took to schedule the hearing, and the fact that the parties had an opportunity to bring issues like these to the Court's attention prior to the hearing at a recently-held status conference. Ms. Garber elected to proceed to closing arguments without asking the Court to issue an arrest warrant for Hernandez.

The Court denied the motion to suppress the identification in an oral ruling. It found that the identification procedure was, in fact, suggestive but that Mr. Berrios failed

to make the requisite showing of a substantial likelihood of misidentification. Mr. Berrios did not appeal the Court's ruling.

### 3. Motion to suppress cell site information

On October 31, 2012, FBI agent David Young submitted an affidavit in support of an application to obtain cell site information from Mr. Berrios's cellphone. The affidavit describes months of surveillance that the FBI conducted of Mr. Berrios and his suspected co-defendants. The application was granted, not by this Court but by a different judge.

During the trial, Mr. Berrios filed a motion to suppress the cell site data on the ground that the affidavit submitted to obtain the order permitting the search contained a material misrepresentation. The Court denied the motion in an oral ruling, finding that the misrepresentation—the erroneous use of the street name "Menard" when it should have been "Howard"—was immaterial to the issuance of the order and that, in any event, there was insufficient basis to find that the misstatement was deliberate. Mr. Berrios did not appeal the Court's ruling.

### C. Berrios's pro se status, appeal, and post-appeal motions

Mr. Berrios was represented by a handful of different attorneys over the years preceding his jury trial. But on June 13, 2017, he knowingly waived his right to counsel and elected to represent himself pro se. The Court appointed one of his former attorneys, Pablo DeCastro, to serve as stand-by counsel for the trial.

Mr. Berrios did, however, have appellate counsel when he appealed his conviction to the Seventh Circuit on May 3, 2019. As previously noted, Mr. Berrios raised a single issue on appeal: he challenged the Court's denial of his motion to

suppress information obtained from the warrantless search of his cellphone. But this single issue was raised only after the following sequence of events occurred, as described by the Seventh Circuit in its opinion:

> [Mr. Berrios] initially indicated to his appellate counsel that he was not interested in the suppression issue. After reviewing the remainder of the record, counsel concluded that there were no non-frivolous issues that could be raised and filed an *Anders* brief. Berrios changed his tune in his response to that brief, however, and indicated that he did want to challenge the court's decision. We therefore rejected counsel's motion to dismiss the appeal and ordered briefing.

The court of appeals affirmed Mr. Berrios's conviction on March 5, 2021. On March 30, 2021, Mr. Berrios filed a motion for compassionate release under 18 U.S.C. § 3582(c), which the Court denied. In April 2022, Mr. Berrios timely filed a pro se motion under 28 U.S.C. § 2255. He filed a supporting memorandum on May 31, 2022, at the Court's direction.

## D.     Mr. Berrios's amended petition

At the end of Mr. Berrios's reply to the government's response to this 2255 petition, in a section he entitled "Amendment of my 2255 Petetion [sic]," Mr. Berrios appears to assert an additional claim relating to a leadership role Sentencing Guidelines enhancement that he contends the Court should not have applied. Def.'s Reply at 12. This section follows another section entitled "Apology to the Court" in which Mr. Berrios expressed some confusion regarding the effect of what he calls his "first batch of 2255 motions" asserted via a 2255 form found at docket entry three. *Id.* Given that Mr. Berrios asserted this additional claim for the first time in his reply, the government did not have a chance to respond to it.

6

Then, on December 8, 2022, Mr. Berrios filed a "notice" including an additional claim not previously asserted in his section 2255 motion or his reply. This claim concerned the effectiveness of Mr. Berrios's counsel during a period when Mr. Berrios was cooperating with the government in its investigation. The Court construed the notice as a motion for leave to amend Mr. Berrios's section 2255 motion and ordered briefing on the matter. The Court thereafter granted Mr. Berrios's motion to amend his petition but also permitted the government to argue that the motion was both untimely and lacked merit, which it did. The Court allowed Mr. Berrios to reply to the government's response, but he did not do so.

On July 25, 2023, Mr. Berrios filed an additional motion to amend his 2255 petition under the docket number of his criminal case, No. 12 CR 853, not on the present docket. In this filing, he states: "I would like to amend my (2255) motion and add the (*United States v. Davis)* '193 S.Ct. 2319' (924c) issue of the 924(c) not being a violent crime." Def.'s Mot. to Amend 2255 Mot. at 1.

In all, Mr. Berrios has asserted a total of nine grounds that he contends entitle him to relief:

- his counsel was ineffective at the March 24, 2017 hearing regarding the motion to suppress his out-of-court identification (claim one);

- his counsel was ineffective at the February 27, 2017 hearing regarding the motion to suppress the information obtained from his cellphone (claim two);

- the Court abused its discretion when it delegated the responsibility of securing Mr. Berrios's witnesses for trial to his standby attorney and not Mr. Berrios himself (claim three);

7

- the Court abused its discretion when it did not allow Mr. Berrios to determine whether materials he believed constituted *Brady* material were actually exculpatory (claim four);

- the Court abused its discretion when it allowed the jury to hear cell site evidence that was obtained in violation of his Fourth Amendment rights (claim five);

- his appellate counsel was ineffective for failing to investigate the record and assert claims (claim six);

- the Court abused its discretion when it applied a leadership role sentencing enhancement (claim seven);

- his counsel was ineffective when counseling him during the process of proffering to the government (claim eight); and

- his conviction for brandishing a firearm during and in relation to the August 2012 currency exchange robbery in violation of 18 U.S.C. § 924(c)(1)(A) is unconstitutional under *Davis* (claim nine).

**Discussion**

When reviewing a motion under 28 U.S.C. § 2255, the Court must hold an evidentiary hearing if the movant alleges facts that, if proven to be true, would entitle him to relief. 28 U.S.C. § 2255(b); *Sandoval v. United States*, 574 F.3d 847, 850 (7th Cir. 2009). A hearing is not required, however, "if the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). The Court concludes that a hearing is not required, as the record shows that Mr. Berrios is not entitled to relief.

A defendant generally may not assert in a section 2255 motion a claim that was

available on direct appeal but that he did not assert. *Bousley v. United States*, 523 U.S. 614, 621–22 (1998). This rule does not apply to ineffective assistance of counsel claims, which "may be brought in a collateral proceeding under § 2255, whether or not the petitioner could have raised the claim on direct appeal." *Massaro v. United States*, 538 U.S. 500, 504 (2003).

Although claims one, two, six, and eight were not raised on direct appeal, they are all ineffective assistance of counsel claims and thus are not procedurally defaulted. The Court will discuss these claims first.

## A.     Ineffective assistance of counsel claims

Mr. Berrios's counsel may be found to have been ineffective if "(1) his counsel's performance fell below an objective standard of reasonableness; and (2) the deficient performance so prejudiced his defense that it deprived him of a fair trial." *United States v. Hall*, 212 F.3d 1016, 1021 (7th Cir. 2000) (citing *Strickland v. Washington*, 466 U.S. 668, 688–94 (1984)). Establishing the deficient performance element requires a movant to show that his attorney's performance "fell below an objective standard of reasonableness." *Kirklin v. United States*, 883 F.3d 993, 996 (7th Cir. 2018) (quoting *Strickland*, 466 U.S. at 688). In doing so, the movant must overcome a strong presumption that "counsel's conduct falls within the wide range of reasonable professional assistance." *Perrone v. United States*, 889 F.3d 898, 908 (quoting *Wyatt v. United States*, 574 F.3d 455, 458 (7th Cir. 2009)). To satisfy the prejudice element, a movant must show that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Kirklin*, 883 F.3d at 996.

9

### 1. Claim one – ineffective assistance of counsel at identification suppression hearing

In his first claim, Mr. Berrios contends that his attorney Sarah Garber was ineffective during the hearing on his motion to suppress his out-of-court identification. Mr. Berrios contends that Ms. Garber should have asked the Court to issue an arrest warrant for witness Hernandez. Mr. Berrios provides no information regarding what Hernandez would have said had he been brought in on a warrant to testify, or how his testimony would be reasonably likely to have changed the result of the proceeding.

Even if one assumes that Ms. Garber's failure to take further steps to get Hernandez into court was objectively unreasonable—a question the Court does not decide—Mr. Berrios has not shown that there is a reasonable probability that the result of the proceeding would have been different if she had done so. Mr. Berrios has offered nothing that explains how any testimony that Hernandez might have provided would be reasonably likely to have led the Court to grant his motion to suppress the out-of-court identification. As previously noted, the Court ultimately *agreed* with Mr. Berrios that the identification procedure was suggestive but denied the motion on the ground that Mr. Berrios had not shown a substantial likelihood of misidentification. Mr. Berrios points to nothing in the record or otherwise that hints that testimony by Hernandez could have altered this conclusion.

For these reasons, Mr. Berrios is not entitled to relief on this ground.

### 2. Claim two – ineffective assistance of counsel at cellphone information suppression hearing

Mr. Berrios next contends that Ms. Garber was ineffective at the hearing on his motion to suppress the information seized from his cellphone. Mr. Berrios contends that

he wanted to testify at the hearing, but that Ms. Garber told him "your [sic] not gonna [sic] fuckin testify', and 'if you do I'm gonna [sic] walk away from this fucking case.'" Def.'s Mem. at 4. Mr. Berrios says that he would have testified as follows: the driver of the car did not make an improper lane change because it was a one lane street; he did not voluntarily give the police his cellphone; and he never told the police that he was in a gang because was not, in fact, in one at that time. Mr. Berrios states in conclusory fashion that his inability to testify effected the outcome of the hearing, but he does not explain why, apart from stating—for the first time in his reply—that the Court could have credited his testimony and discredited that of law enforcement.

The Court sets aside the question of the objective reasonableness of Ms. Garber's conduct and focuses on the question of prejudice.

Mr. Berrios's anticipated testimony involves, first, the basis for the traffic stop; he says that he would have testified, contrary to the contentions of law enforcement, that there was no improper lane change. But this is immaterial; the Court ruled following the hearing that there was reasonable suspicion for the stop apart from any allegedly improper lane change, namely, the fact that the vehicle had been linked to one of the robberies. The Court also questions the materiality of Mr. Berrios's anticipated testimony that he did not voluntarily give his cellphone to law enforcement, seeing as how they seized it as part of a search incident to his arrest, as it was on his person. That aside, none of his anticipated testimony would have had any bearing at all on the ultimate ruling, by the court of appeals, that there was an independent source for all the evidence from the cellphone that the government used, a ruling that effectively assumed the illegality of the seizure and search.

11

For these reasons, Mr. Berrios has failed to show that he was prejudiced by Ms. Garber's allegedly deficient conduct in connection with the motion to suppress the cellphone and its contents. He is therefore not entitled to relief on this ground.

### 3. Claim six – ineffective assistance of counsel on direct appeal

In claim six, Mr. Berrios contends that the filing of an *Anders* brief by his appellate counsel, Michelle Jacobs, *see Anders v. California*, 386 U.S. 738 (1967), in which she concluded that there was no non-frivolous basis for appeal was "false in principle" because she refused to raise his claims unless he paid her. Def.'s Mem. at 15. The same standard that governs claims for ineffective assistance of trial counsel governs claims challenging the performance of appellate counsel. *Makiel v. Butler*, 782 F.3d 882, 897 (7th Cir. 2015). Thus, to succeed on this claim, Mr. Berrios must show both deficient performance and prejudice. *See id.* "Appellate counsel is not required to present every non-frivolous claim on behalf of her client." *Id.* To demonstrate deficient performance, Mr. Berrios must show that the arguments Ms. Jacobs failed to make were both "obvious" and "clearly stronger" than the issues she did raise on appeal. *Id.* at 898 (quoting *Brown v. Finnan*, 598 F.3d 416, 425 (7th Cir. 2010)). Making this showing is "generally difficult" because "the comparative strength of two claims is usually debatable." *Id.* (quoting *Shaw v. Wilson*, 721 F.3d 908, 915 (7th Cir. 2013)).

The Court agrees with the government that this claim lacks merit because Mr. Berrios has not shown—indeed, he has not even argued—that Ms. Jacobs failed to raise an issue that was "clearly stronger than those presented." *Smith v. Robbins*, 528 U.S. 259, 288 (2000) (quoting *Gray v. Greer*, 800 F.2d 644, 646 (7th Cir. 1986)). The government contends that Mr. Berrios failed to even identify which issues he contends

12

counsel should have raised. That is true, technically speaking, but construing the motion liberally, the Court assumes that Mr. Berrios refers to the various other claims he now asserts that were not raised on direct appeal.

The government is correct, however, that Mr. Berrios has made no effort to show that any of these points "were stronger than those raised and that they would have changed the outcome of his appeal." Gov't's Resp. at 19. The Court concludes that none of the arguments Mr. Berrios now raises are "obvious" or "clearly stronger" than the challenge Ms. Jacobs made to the Court's denial of his motion to suppress information obtained from the warrantless search of his cellphone, as they all lack merit for reasons either previously discussed or discussed below. *Makiel*, 782 F.3d at 897. The Court therefore finds against Mr. Berrios on his claim of ineffective assistance of appellate counsel.

### 4. Claim eight – ineffective assistance of counsel during proffers

Claim eight is the "additional claim" that was the subject of Mr. Berrios's first motion to amend his 2255 petition, which the Court granted. In this claim, Mr. Berrios contends that the attorney representing him during his early cooperation with the government, Scott Frankel, performed ineffectively in advising him to make a proffer and in making representations regarding the charges and sentence he would face if he proffered.

A one-year limitations period applies to a section 2255 motion. 28 U.S.C. § 2255(f). The parties do not dispute that the limitations period for Mr. Berrios's motion began to run on the date the judgment of his conviction became final, see 28 U.S.C. § 2255(f)(1), which was June 3, 2021, when the time for filing a petition for writ of

certiorari to the Supreme Court lapsed following the adverse ruling on his direct appeal. Mr. Berrios filed his first amended section 2255 motion on December 8, 2022, about six months after the limitations period ran out on June 3, 2022.

This additional claim in Mr. Berrios's amended motion is therefore untimely unless it "relates back" to the claims raised in his timely-filed April 5, 2022 and May 31, 2022 section 2255 motions (the latter document is, largely, a supporting memorandum, but the Court considers it as a timely section 2255 motion for present purposes). *See Beason v. Marske*, 926 F.3d 932, 938 (7th Cir. 2019). New claims do not relate back simply because they are based on "the same trial, conviction, or sentence as a timely filed claim"—rather, the new and original claims must share a "common core of operative facts." *Id*. (quoting *Mayle v. Felix*, 545 U.S. 644, 662 (2005)).

The new claim raised in Mr. Berrios's December 8, 2022 amended motion does not share a common core of operative facts with any of the claims in his original motion. Mr. Berrios's new ineffective assistance claim involves the performance of his counsel during the cooperation process and grand jury proceedings. His original ineffective assistance claims challenged a different trial counsel's performance during various suppression hearings and his appellate counsel's work on direct appeal. Mr. Berrios's new claim therefore has no relationship to any of the other claims he asserted in his original motion. For these reasons, Mr. Berrios's ineffective assistance claim regarding the assistance of counsel he contends was rendered throughout his proffers and surrounding his grand jury testimony does not relate back to the date of filing of the original motion. As a result, this claim is time-barred.

Even if the claim were timely, Mr. Berrios admitted under oath during his grand

14

jury testimony that no promises had been made to him regarding his potential charges or sentence in order to induce his cooperation and testimony. Mr. Berrios also admitted in his grand jury testimony that counsel was nearby and he could stop the proceedings to confer with his attorney if he chose. *Blackledge v. Allison*, 431 U.S. 63, 74 (1977) ("The representations of the defendant [made while under oath] . . . constitute a formidable barrier in any subsequent collateral proceedings. Solemn declarations in open court carry a strong presumption of verity."); *see also United States v. Peterson*, 414 F.3d 825, 827 (7th Cir. 2005) ("Judges need not let litigants contradict themselves so readily; a motion that can succeed only if the defendant committed perjury . . . may be rejected out of hand unless the defendant has a compelling explanation for the contradiction.").

In sum, claim eight is both time-barred and lacks merit.

## B. Procedurally defaulted claims

Claims three, four, five, seven, and nine are neither ineffective assistance of counsel claims, nor were they raised on direct appeal.[1] Thus, Mr. Berrios has procedurally defaulted on those four claims and cannot pursue them unless he demonstrates cause and prejudice. *Bousley*, 523 U.S. at 622. Ineffective assistance of counsel can constitute cause for procedural default. *Murray v. Carrier*, 477 U.S. 478, 488 (1986); *Castellanos v. United States*, 26 F.3d 717, 718 (7th Cir. 1994).

Mr. Berrios asserts ineffective assistance of appellate counsel as cause for his procedural default of these claims. The government claims that he did not assert this excuse, but in doing so, it overlooks Mr. Berrios's initial section 2255 form (dkt. no 3)

---

[1] Additionally, claims seven and nine are time-barred for reasons explained below.

15

filed in this matter ahead of his memorandum.  On that form, question fifteen asks: "If any of the grounds listed in 14 A, B, C, and D were not previously presented, state briefly what grounds were not so presented, and give your reasons for not presenting them."  Mot. to Vacate, Set Aside or Correct Sentence, #15.  In response, Mr. Berrios wrote: "No grounds have previously been presented *due to ineffective assistance of counsel*."  *Id.* (emphasis added).  Accordingly, the Court will assess each procedurally defaulted claim below to determine whether ineffective assistance will excuse the default.

If the record shows that a particular underlying claim lacks merit, then counsel was not ineffective in failing to assert that claim.  *See Johnson v. Thurmer*, 624 F.3d 786, 793 (7th Cir. 2010); *Fuller v. United States*, 398 F.3d 644, 650–52 (7th Cir. 2005).  As discussed below, the record conclusively shows that Mr. Berrios's claims lack merit and that neither his trial nor appellate counsel provided ineffective assistance.

### 1.    Claim three – abuse of discretion regarding trial witness list

In claim three, Mr. Berrios contends that his right to self-representation was violated when the Court directed Mr. Berrios's standby counsel to handle his witness list, including securing those witnesses for trial.  He contends that standby counsel failed to secure his witnesses for trial and thus put him at a disadvantage.

This claim merit because Mr. Berrios's right to self-representation is not absolute.  *See generally*, *Faretta v. California*, 422 U.S. 806, 835 (1975).  "Even at the trial level . . . the government's interest in ensuring the integrity and efficiency of the trial at times outweighs the defendant's interest in acting as his own lawyer."  *Martinez v. Ct. of Appeal of California, Fourth App. Dist*., 528 U.S. 152, 162 (2000).  Given that Mr.

Berrios was incarcerated leading up to his trial and during the trial, it was reasonable for the Court to direct standby counsel to handle the resource intensive and administratively difficult task of securing witnesses for trial. It would have been virtually impossible for Mr. Berrios to do so himself while incarcerated. For these reasons, Mr. Berrios's appellate counsel was not ineffective for failing to raise this claim on direct appeal. Mr. Berrios therefore cannot use her alleged ineffectiveness to establish cause for his default.

Even assuming that this claim should have been raised on appeal, Mr. Berrios has not shown a reasonable probability that the outcome of the trial would have been different had his standby counsel secured the witnesses he says he wanted to call to testify at trial. First, Mr. Berrios identifies only one such witness: Victor Vargas, who he contends is "one of the workers from the [AT&T] robbery, who could have disputed testimony given to the [FBI] concerning the robbery." Def.'s Mot. at 5. But mere speculation that Vargas "could have disputed [other] testimony" regarding the robbery is insufficient, and that is all Mr. Berrios has offered. There is no support in the record for his contention that Vargas could have offered anything exculpatory or even impeaching. Accordingly, Mr. Berrios has not shown a reasonable probability that the outcome of his trial would have been different had Vargas been called to testify. That aside, as the Seventh Circuit noted on direct appeal, the evidence implicating Mr. Berrios in the crimes with which he was charged was extensive and overwhelming.[2] He has not

---

[2] The court noted inculpatory evidence from the following sources: "Rodriguez's testimony"; "Berrios's post-arrest statements"; "[a] recorded call that Berrios made from jail to his girlfriend, in which he admitted that he committed at least one robbery"; "[s]urveillance videos from the victim stores"; "[t]estimony from robbery victims"; "[t]estimony from Jose Hernandez, an employee of one of the victim stores";

shown that the *possibility of* contradictory testimony by a single witness to a single robbery would have altered the outcome.

Mr. Berrios is therefore not entitled to relief on this ground.

### 2.      Claim four – abuse of discretion regarding *Brady* materials

In claim four, Mr. Berrios contends that he requested various materials under *Brady v. Maryland*, 373 U.S. 83 (1963), and that "the court abused its discretion because as petitioner exercised his right to self-representation, he himself should have been allowed to make such determination as to what information is or would be helpful to his defense."  Def.'s Mot. at 6.  Mr. Berrios appears to be asserting that his rights to *Brady* material and to self-representation were both violated.

By way of background, Mr. Berrios appears to be referring to the Court's ruling on a motion he filed on July 24, 2017 entitled "Motion for immediate disclosure of favorable evidence."  Case No. 12 CR 853, Dkt. no. 309.  The Court ordered briefing on Mr. Berrios's motion.  On September 18, 2017, it issued a written decision granting the motion in part and denying in part.  The Court also directed the government to provide certain materials to the Court for *in camera* inspection so that it could determine whether those materials contained evidence favorable to Mr. Berrios or were otherwise properly discoverable.  Then, on September 25, 2017—after the Court reviewed the documents produced by the government along with an *ex parte* memorandum explaining their non-production—it issued an order finding that the disputed materials

---

"[t]estimony from Sabrina Couvee, who was Rodriguez's girlfriend at the time"; "[a] car dealership receipt showing the purchase of the white Lexus, with Berrios's telephone number on it"; "[a]gents' testimony about the October 12, 2012, traffic stop of Berrios and Revis"; and "[c]lothing and guns recovered from the Lexus on the date of Berrios's arrest."  *Berrios*, 990 F.3d at 530-31.

were not in any way exculpatory of Mr. Berrios and/or concerned a witness that the government represented it was not calling to testify at trial (and thus the materials had no impeachment value).

Mr. Berrios's contention that the Court violated his right to self-representation when it ruled on the governments' disclosure obligations under *Brady* is based on a fundamental misunderstanding of his role as a pro se defendant and how *Brady* challenges are handled. First, the responsibility of verifying the government's representations about whether evidence is favorable and material lies with the Court— not the defendant. Moreover, the Court could have simply relied on the government's representations regarding *Brady* materiality and favorability *without* conducting an independent review of the evidence. *United States v. Bland*, 517 F.3d 930, 935 (7th Cir. 2008) ("It is well-established that the decision whether to review purported *Brady* materials *in camera* is entrusted to the district court's sound discretion."). But the Court took the extra precaution of conducting its own inspection of the purportedly favorable materials and determined that the government was under no obligation to disclose them. Mr. Berrios's contention that this determination should have been made by him and not by the Court simply does not reflect the law. Thus, his appellate counsel was not ineffective for failing to raise this claim.

Regarding the alleged *Brady* violation itself, there is no basis to conclude that Mr. Berrios's claim on this point had sufficient merit that his appellate counsel should be considered ineffective for failing to raise it. "A plaintiff must show three elements in order to prove a *Brady* violation: (1) the evidence at issue was favorable to the accused, either because it is exculpatory or because it is impeaching; (2) the evidence must have

been suppressed by the state, either willfully or inadvertently; and (3) the evidence must have been material, meaning there is a reasonable probability that the result of the proceeding would have been different." *Beaman v. Freesmeyer*, 776 F.3d 500, 506 (7th Cir. 2015). Mr. Berrios offers no explanation of how the materials in question could have been exculpatory or impeaching, let alone how they give rise to a reasonable probability of altering the outcome of his case.

For these reasons, Mr. Berrios has not overcome his default of claim four, and the claim lacks merit in any event.

### 3. Claim five – abuse of discretion regarding admission of cell site evidence

In claim five, Mr. Berrios contends that the affidavit submitted by FBI agent David Young in support of the government's application to retrieve cell site data from his cellphone contained various lies, misstatements, and inflammatory word choices and therefore could not have supported a proper finding of probable cause. For this reason, Mr. Berrios contends, the fruits of that search—i.e., the cell site information—were unlawfully obtained and thus should have been excluded from evidence.

First, Mr. Berrios misstates the standard needed to support the issuance of the order that the application sought. The Court explained during the trial that:

> When there's a contention that the government obtained information by making false statements to a judge, there are basically three questions: Was there a false statement? Was it either knowingly false or recklessly false? And was it material? Material means did it affect the decision, and more specifically, if you take out the false statement, would there still have been enough of a basis for the judge to enter the order. In this case, it's not a warrant. It was an order to obtain cell tower site -- cell site information.

Trial Tr. Dec. 18, 2017 at 1006:12-21. And as previously discussed, when the Court

20

ruled on Mr. Berrios's motion to suppress the cell site information during the trial, it found that the one and only discrepancy raised—the use of the street name "Menard" when it should have been "Howard"—was not material and likely an unintentional mistake. The Court finds that the same logic applies to the laundry list of discrepancies, "lies," or allegedly inflammatory word choices (i.e., "offender") that Mr. Berrios now offers to contend that the order was based on false statements. Thus, this claim lacks merit, and Mr. Berrios's counsel was not ineffective for failing to raise it.

Even if Mr. Berrios's underlying claim here had sufficient merit that it should have been raised by his appellate counsel, he has failed to show that the outcome of the case would have been changed by the exclusion of the cell site information. During the trial, an agent offered testimony in which he analyzed cell site data taken from Mr. Berrios and his co-defendants' phones—pursuant to the court order—and created maps that placed them near the victim stores just before or after the stores were robbed. But those cell tower maps were just one part of the constellation of evidence establishing Mr. Berrios's guilt. For example, each time it discussed this data during closing arguments in relation to one of the robberies, the government bookended those references with a summary of all the other evidence that implicated Mr. Berrios in that particular robbery. Often that evidence was far more direct than the cell tower information, which the government's own expert conceded cannot definitively place someone at a particular address. Among other things, as the Seventh Circuit noted, "Berrios admitted in his testimony to the grand jury—testimony that the petit jury heard—that he was the leader of a robbery crew that included Revis, Diaz, and Delacruz. Berrios testified about 24 armed robberies that he committed, nine of which

formed the basis for the charges he faced." *Berrios*, 990 F.3d at 534. In other words, the cell site data never stood alone, and the government itself cast it as "big-picture, broad categories of evidence." Trial Tr. Dec. 20, 2017 at 1568:7-8. In sum, Mr. Berrios has not shown that he was prejudiced by the admission of this evidence.

The Court concludes that claim six is procedurally defaulted and that Mr. Berrios has not excused the default.

### 4. Claim seven – abuse of discretion regarding leadership role enhancement

As previously noted, Mr. Berrios asserted claim seven for the first time in his reply to the government's response to his original section 2255 motion. Moreover, it was not included in his first amended motion, so the government never had an opportunity to respond to this claim.

Even if the Court were to construe the part of Mr. Berrios's reply that seeks to raise this additional claim as a proper amendment to his original section 2255 motion, it was filed on November 22, 2022, long past his June 3, 2022 deadline to file his petition. It is therefore untimely under 28 U.S.C. § 2255(f)(1). Nor does claim seven—which concerns an alleged sentencing error on the Court's part—relate back to the filing of Mr. Berrios's original motion, as this claim does not share a "common core of operative facts" with any claim in that motion. *Mayle*, 545 U.S. at 662.

Even if claim seven was timely, it is procedurally defaulted because it was not raised on direct appeal and is not a claim of ineffective assistance of counsel. Nor can Mr. Berrios excuse the default by claiming ineffective assistance of his appellate counsel as cause for failing to raise the claim, as the claim lacks merit for the following reasons.

The Court applied a two-level leadership enhancement in calculating the Sentencing Guidelines offense level on count fifteen under U.S.S.G. § 3B1.1(c) because the evidence showed that Mr. Berrios was not only the common element in all of the robberies but also a leader or organizer of the robbery spree.  Mr. Berrios contends that this enhancement was improperly applied because "in order for the leadership roll [sic] to apply, I believe there has to be four or more people that a defendant has to have control over," and the enhancement was applied to count fifteen, which concerned a robbery that supposedly only involved two people.  Def.'s Reply at 12.  But the text of section 3B1.1(c) states that the offense level should be increased by two levels when "the defendant was an organizer, leader, manager, or supervisor *in any criminal activity* other than described in (a) or (b)."  *See* U.S.S.G. § 3B1.1(c).  And as the Court stated at sentencing, "it's appropriate to take into account in deciding [whether to apply the enhancement] not just what happened at that one store on that one day but also the totality of the evidence."  Sentencing Tr. at 29:13-16.  Thus, there is no basis to conclude that the Court erred when it applied a two-level leadership role enhancement to count fifteen.

In sum, claim seven was never properly before the Court.  Even if it were, the claim is time-barred, procedurally defaulted, and lacking in merit.

### 5. Claim nine – unconstitutionality of section 924(c)(1)(A) conviction under *Davis*

As previously noted, claim nine was raised for the first time in a second motion to amend Mr. Berrios's section 2255 motion, which was filed on Mr. Berrios's criminal docket on July 25, 2023.  The claim is therefore untimely under 28 U.S.C. § 2255(f)(1) for the reasons described regarding Mr. Berrios's other late claims.  Nor does this

23

claim—which concerns a facial challenge to the constitutionality of one of his convictions—relate back to the filing of Mr. Berrios's original petition. Moreover, the claim—as set forth in his motion to amend—is too cursory and undeveloped for the Court to consider on the merits.[3]

The Court therefore denies Mr. Berrios's second motion to amend his section 2255 motion.

## Conclusion

For the reasons stated above, the Court directs the Clerk to enter judgment denying Robert Berrios's motion under 28 U.S.C. § 2255. The Court also denies Mr. Berrios's motion to amend his 2255 motion [dkt. no. 601], which was filed in Case No. 12 CR 853. The Court declines to issue a certificate of appealability because it can find nothing to suggest that the merits of the claims that it rejected are debatable, capable of different resolution, or deserving of further consideration. *See* 28 U.S.C. § 2253(c)(2); *Barefoot v. Estelle*, 463 U.S. 880, 893 n.4 (1983); *Porter v. Gramley*, 112 F.3d 1308, 1312 (7th Cir. 1997).



MATTHEW F. KENNELLY
United States District Judge

Date:  August 14, 2023

---

[3] Mr. Berrios states only that "I just got to this prison so I don't have my legal mail w/ me at this time so I'm not able to go through my jury instructions at this time to see if the Davis case applies to me, but I think it does." Mot. to Amend 2255 Mot. at 1.